IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TAMMY TILLEY, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-15-1206-STE |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 8-29). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 15, 2011, the alleged onset date. (TR. 10). At step two, the ALJ determined that Ms. Tilley had the following severe impairments: major depressive disorder; substance induced mood disorder; anxiety-related disorder; chronic back pain; and chronic obstructive pulmonary disease. (TR. 10). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 21).

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. (TR. 27). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except with nonexertional limitations. The claimant can: lift/carry 20 pounds occasionally and 10 pounds frequently; walk/stand up to 6 of 8 hours with normal breaks; and sit for up to 6 of 8 hours. The claimant must be able to change positions briefly from sitting to standing and vice versa, remaining at the work station and without unscheduled breaks. The claimant can occasionally climb ladders, ropes, or scaffolds. The claimant should avoid moderate exposure to fumes/ odors/ dusts/ gases/ poor ventilation. The claimant can understand, remember and carry out simple

instructions, have minimal and superficial interaction with coworkers and supervisors and no interaction with the public.

(TR. 23).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. There, she presented the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 66-68). Given the limitations, the VE testified that Plaintiff could perform three light/unskilled jobs. (TR. 68). The ALJ adopted the testimony of the VE and concluded that Ms. Tilley was not disabled based on her ability to perform the identified jobs. (TR. 28-29).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) inconsistency between the RFC as vocalized at the hearing and subsequently written in the administrative decision and (2) a lack of specificity concerning the time and frequency allocated for the "sit-stand" option, which consequently resulted in a lack of substantial evidence at step five.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the

evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. NO INCONSISTENCY IN THE RFC

Ms. Tilley first alleges that the RFC as presented verbally to the VE at the hearing was inconsistent with the RFC as written in the administrative decision, as it pertains to Plaintiff's need to shift positions during work. (ECF No. 15:2). At the hearing, the ALJ posed the following hypothetical, in part, to the VE: "the person needs the ability to change position at the work station without taking a break, and that would be just the brief change of position." (TR. 67). And in the administrative decision, the ALJ wrote: "[t]he claimant must be able to change positions briefly from sitting to standing and vice versa, remaining at the work station and without unscheduled breaks." (TR. 23).

Ms. Tilley contends that "the RFC in the decision does not precisely match the RFC at the hearing." (ECF No. 15:2). While not identical, the Court finds no discernable differences between what the ALJ said at the hearing and then wrote in the decision. Both RFCs allow Plaintiff to shift positions during working hours, while continuing to work, without having to take a scheduled break. The Court rejects this point of error.

## VI. NO LACK OF SPECIFICITY CONCERNING THE TIME ALLOCATED FOR THE "SIT-STAND" OPTION

As stated, the RFC provided that Ms. Tilley "must be able to change positions briefly from sitting to standing and vice versa, remaining at the work station and without unscheduled breaks." (TR. 23). Plaintiff argues that the ALJ erred in failing to specify: (1) the frequency of her need to alternate positions and (2) the precise amount of time she would require when shifting positions. (ECF No. 15:3-5).

4

In asserting this position, Plaintiff relies heavily on SSR 96-9p, which provides:

> An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. *The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.* It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis provided). As an initial matter, the Court notes that SSR 96-9p is specifically applicable to *sedentary* work and the RFC in the present case limited Plaintiff to less than a full range of *light* unskilled work. Thus, as discussed in more detail below, its application to the present case is limited.

Plaintiff also relies upon *Armer v. Apfel*, 2000 WL 743680 (10th Cir. June 9, 2000) (unpublished op.), asserting the court therein ruled that the ALJ's RFC in which he found the plaintiff would have to "change positions from time to time" did not comply with SSR 96-9p and constituted reversible error. However, the decision in *Armer* was based upon numerous errors by the ALJ that significantly distinguish it from the present case.

Unlike the instant case, in *Armer,* the ALJ made no specific finding about the plaintiff's ability to sit, stand, or walk, and merely stated that the plaintiff would need to "change positions from time to time to relieve his symptomatology." *Id.* at *2 (internal quotations omitted). The Tenth Circuit also pointed out that a consultative examination,

5

upon which the ALJ appeared to at least partially rely, did not include an RFC assessment, even though the Social Security regulations call for such assessments to be included. *Id.* at *3. Further, the ALJ contradicted even the incomplete consultative examination, which indicated the plaintiff had good dexterity in his hands, by concluding the plaintiff had "unspecified residuals from carpal tunnel syndrome." *Id.* Additionally, the court noted the ALJ made no attempt to identify the "unspecified residuals," nor in any way explain how they manifested themselves into physical limitations. *Id.* The Court then stated, "The ALJ's finding that [the plaintiff] would have to change positions from time to time to relieve his symptomatology is equally vague. The ALJ erred by failing to make specific findings assessing the extent of [the plaintiff]'s manipulative impairments and [the plaintiff]'s ability to sit, stand, and walk." *Id.*

In *Armer*, the RFC was grossly lacking in necessary information. The ALJ failed to even specify how long the plaintiff could sit, stand or walk, much less how often the plaintiff would need to alternate sitting and standing and/or if that is what the ALJ intended to reference by "change positions." *Id.* at *2-3. There is no question given these glaring omissions in not only the RFC but also the hypotheticals provided to the VE, that the VE's testimony could not provide substantial support for the ALJ's ultimate decision regarding jobs the plaintiff could perform. *Id.* at *4.

Plaintiff also relies upon *Vail v. Barnhart*, 84 F. App'x 1 (10th Cir. 2003). According to Ms. Tilley, the Court in *Vail* ruled that an RFC indicating a plaintiff would require "brief changes of position (alternate sitting and standing)" constituted reversible

error. (ECF No. 15:7-8). However, Plaintiff's characterization of the *Vail* decision is also incomplete.

In *Vail*, the ALJ's first hypothetical to the VE provided that the plaintiff was "limited to lifting 20 pounds occasionally, ten pounds frequently, [c]an stand or walk for six hours in an eight-hour day[,] [can] only occasionally stoop[,] and needs to be allowed to alternate sitting and standing due to pain." *Id.* at 2, n.1. The VE requested clarification regarding the alternating requirement, the ALJ answered it would be "as needed" and the VE testified there would be no jobs available to the plaintiff. *Id.* The ALJ then omitted "as needed" from the hypothetical and the VE indicated there would be jobs the plaintiff could perform, however, "a new employer would not be likely to make unspecified other accommodations" the plaintiff would likely require "because he was over fifty years of age." *Id.* at 2-3.

In the ALJ's ultimate decision, the RFC in *Vail* consisted only of the ability to perform "less than the full range of light work with brief changes of position" and cited the VE's testimony to determine the plaintiff could perform unskilled light production labor and unskilled sedentary assembly work. *Id.* at 3. The Tenth Circuit reversed and remanded the decision for three reasons: First, "[t]he ALJ did not properly define how often [the plaintiff] would need to change positions even 'as needed' ... and he did not offer whether [the plaintiff] would be able to return to previous relevant work." *Id.* at 4. Second, [t]he ALJ failed to acknowledge in his decision whether and how he had evaluated the VE's negative responses to the hypothetical questions he posed." *Id.* at 5. And finally, "[t]he VE's qualification of her statements in the record suggests that [the

7

plaintiff] may not actually be able to hold the positions the ALJ described because he would require accommodation not available to a [plaintiff] with his characteristics." *Id.* Unlike *Vail*, in the present case, the ALJ did define how often Plaintiff would need to change positions, provided an unambiguous hypothetical to the VE including the same, and relied on the VE's corresponding testimony regarding jobs Plaintiff could perform. (TR. 28, 67-68).

The question in this case essentially comes down to whether "the ability to "change positions briefly from sitting to standing and vice versa . . . without unscheduled breaks" is a sufficient indication of how often a plaintiff would have to alternate sitting and standing in order for the VE to adequately answer proposed hypotheticals regarding a plaintiff's ability to perform certain work. Plaintiff's reliance on *Armer* and *Vail* to answer this question is not compelling.

What is persuasive, however, is the Tenth Circuit Court of Appeal's recent decision in *Nelson v. Colvin*, ___ Fed. A'ppx. ___, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished op.). In *Nelson*, the plaintiff argued that the RFC determination was too vague because it had allowed Plaintiff to "periodically alternate between sitting and standing" while performing light work. *Nelson*, at *3. The Court began by acknowledging that the plaintiff had testified that she could only sit for "about 15 or 20 minutes at a time." *Id.* Ultimately, the Tenth Circuit found no error in the RFC because: (1) it had been taken verbatim from an RFC espoused by the plaintiff's treating physician, (2) there was "no evidence in the record to support any limitation beyond the need to 'periodically' alternate between sitting and standing[,]" and (3) there was "no

8

evidence that the need to periodically alternate between sitting and standing prevent[ed] [the plaintiff] from performing the jobs identified by the VE." *Id.*

*Nelson v. Colvin* is persuasive in the instant case. According to Plaintiff, the need for specificity regarding the frequency and length of time allotted to shifting positions is critical in light of Plaintiff's testimony that "if she stands or walks too long, about ten to fifteen minutes, she has numbness in her right leg." (ECF No. 22:3). But the Court finds no evidence that Mr. Tilley ever provided such testimony. Ms. Tilley testified regarding pain in her neck, treatment through "lay[ing] around" and taking hot baths, panic attacks, a broken foot, and an inability to perform household chores. (TR. 58-64). But contrary to her allegation in her reply brief, Ms. Tilley never testified that prolonged standing or walking caused numbness in her right leg.

In addition to a lack of testimony, the record lacks evidence that any physician ever limited Plaintiff's standing or sitting, or opined that Ms. Tilley would need to alternate positions while working. Indeed, the ALJ noted the absence of such findings in the decision, stating: "[a]lthough the claimant alleges very severely limited activities of daily living (just sitting on the couch all day and watching television), no treating source has placed permanent limitations on her physical activities." (TR. 26).

In assessing Ms. Tilley's RFC, the ALJ heavily relies on an opinion from state agency consultant Dr. Herbert Waxman. (TR. 25-26). Dr. Waxman opined that Ms. Tilley could: (1) lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; (2) walk/stand up to 6 of 8 hours with normal breaks; and (3) sit for up to 6 of 8 hours. (TR. 686). Although the ALJ gave Dr. Waxman's opinion deference, the ALJ

added an additional limitation—regarding the need to alternate positions—that neither Dr. Waxman nor any other doctor had espoused. The ALJ recited Dr. Waxman's findings, adopted them in the RFC, and then stated:

> With the addition of [sic] requirement for the ability to alternate positions, the residual functional capacity set forth above in Finding No. 5 resolves some doubt *in favor* of the claimant regarding her alleged physical limitations and is not inconsistent with the medical evidence of record, including the consultative examination report.

(TR. 26) (emphasis added). Indeed, the additional restriction accommodated Plaintiff's subjective complaints to various physicians regarding pain that she experienced if she sat or stood for too long. *See* TR. 305 (pain is worse when she sits for a long time), TR. 315 (standing makes pain feel better, sitting makes pain feel worse), TR. 595 (pain is worse when "sitting alot" [sic]), TR. 628 (pain prevents Plaintiff from standing or sitting "a long time"). But beyond "a lot" or "a long time," the record contains no evidence regarding the precise amount of time Ms. Tilley would need in alternating positions or how frequently she would need to do so. Furthermore, as in *Nelson*, there is no evidence, nor has Plaintiff argued, that she is incapable of performing the jobs identified by the VE which accommodate her need to "change positions briefly from sitting to standing and vice versa, remaining at the work station and without unscheduled breaks." (TR. 23). Accordingly, the Court concludes that the RFC, as written, sufficiently reflected the evidence and accommodated Plaintiff's needs. Consequently, the Court also rejects Plaintiff's argument that the step five findings lacked substantial evidence because the conclusion had been based on an allegedly faulty RFC. *See Goforth v. Colvin*, 2016 WL 2889080, at *5 (W.D. Okla. May 17, 2016)

("the Court also rejects [plaintiff's] related argument challenging the hypothetical and jobs identified by the VE, as Plaintiff's argument was based on an allegedly faulty RFC which has been disproved.")

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **AFFIRMS** the Commissioner's decision.

ENTERED on August 10, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE